UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ALFRED L. STONE, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 09-2361 (RBW) |
| JOSEPH P WALSH, JR. *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

In this civil action brought *pro se* under 42 U.S.C. § 1983, the plaintiff alleges that the District of Columbia, through its Department of Employment Services ("DOES"), terminated his unemployment benefits without due process of law. He names as defendants the DOES and its director, Joseph P. Walsh, Jr. The defendants move to dismiss this action pursuant to Rule 12(b)(5)[1] and (b)(6) of the Federal Rules of Civil Procedure [Dkt. No. 9]. In his response to the defendants' motion, the plaintiff moves for summary judgment pursuant to Rule 56 [Dkt. Nos. 19, 20]. Upon consideration of the parties' submissions and the entire record, the Court will grant the defendants' motion to dismiss under Rule 12(b)(6) and will deny the plaintiff's motion for summary judgment.

---

[1] The defendants assert that "Defendant Walsh was not served personally." Memorandum of Points and Authorities in Support of the Motion of Defendants to Dismiss the Complaint ("Defs.' Mem.") at 6. The plaintiff is proceeding *in forma pauperis* and thus is relying on court officers to effect service of process. *See* 28 U.S.C. § 1915(d). Because the plaintiff has not been afforded the opportunity to correct the service deficiency by providing a suitable address for Walsh, the Court will not penalize him by dismissing the case under Rule 12(b)(5) for insufficient service of process. Moreover, the defendants correctly assert that the DOES is an entity incapable of being sued separately from the District of Columbia. Defs.' Mem. at 6-7. Pursuant to Rule 19 of the Federal Rules of Civil Procedure, the District of Columbia is substituted as the proper party-defendant.

**FACTUAL BACKGROUND**

The allegations in the complaint are as follows. "[O]n or about November 13th, 2007, Plaintiff was laid off from employment as a plumber with A-Advance LLC, d.b.a. John G. Webster Company [("A-Advance")], located [in] Beltsville [Maryland]." Complaint for Declaratory and Injunctive Relief from Unemployment Statute Violative of Due Process; Denial of Benefits Without Opportunity for Prior Administrative Hearing Before Denying Benefits and Declaring Benefits Were Wrongfully Received and Payment Was Due ("Compl.") at 3. In November 2007, the plaintiff applied for unemployment benefits with the DOES, was deemed eligible to receive them and collected weekly benefits until May 2008, "when the funds were exhausted." *Id*. at 3-4. In July 2008, the DOES notified the plaintiff in writing that he qualified for an additional twelve weeks of benefits, which he collected until his return to work "on or about August 2nd, 2008." *Id*. at 4. In October 2008, the plaintiff represents that "his employer[,] SOJAM," "ordered [him] not to return to work . . . because of a dispute . . . over the payment of a shift premium for a new assignment." *Id*. He applied again for unemployment benefits but SOJAM contested payments "because they . . . alleged the Plaintiff left his employment voluntarily." *Id*. The plaintiff successfully appealed to the DOES, which "paid the claim." *Id*.

In December 2008, a DOES employee "contacted the Plaintiff by telephone [] and . . . represented that it had been determined that he . . . was ineligible for unemployment compensation benefits in the District of Columbia [] because [] the claim should have been filed in Maryland. *Id*. at 4-5. On July 15, 2009, the State of Maryland denied the plaintiff's claim as to SOJAM under Maryland law, and advised him of his right to appeal the decision to "the Circuit Court for Baltimore City or one of the Circuit Courts in a county in Maryland. *Id*. at 5;

*see* Plaintiff's Response to the Defendant's Motion to Dismiss; and, Plaintiff's Motion Seeking Summary Judgment ("Pl.'s Resp.") [Dkt. No. 19], Exhibit ("Ex.") C (Decision of the State of Maryland Department of Labor, Licensing and Regulation). "[O]n or about January 23rd, 2009," the plaintiff "received a second written determination [from the DOES] representing that an overpayment had occurred . . . for the period [between] July 12, 2008 [and] August 2nd, 2008; and, payment was demanded . . . in the amount of $1,436." Compl. at 5; Pl.'s Resp., Ex. B (Notice of Determination of Overpayment). On February 7, 2009, the plaintiff appealed the overpayment determination to the "Unemployment Appeals Board," Pl.'s Resp., Ex. B, but the DOES "refused or failed to schedule a hearing date for the appeal of their determination." Compl. at 5. "[O]n or about March 31st, 2009," the plaintiff "received a third determination" concerning the overpayment and a demand for $6,462. *Id*.

The plaintiff filed this civil action on December 14, 2009. He seeks "[a] timely, adequate notice detailing reasons for the proposed termination of his benefits and setting forth his right to retain an attorney . . . [,a]n opportunity for a prior evidentiary hearing [with the] opportunity to confront and cross examine adverse parties and witnesses", and a written decision. Compl. at 9.

## DISCUSSION

### I. Standards of Review

A court may dismiss a complaint on the ground that it fails to state a claim upon which relief can be granted if, assuming the facts as alleged by the plaintiff to be true and drawing all inferences in the plaintiff's favor, it appears that the plaintiff can prove no facts "consistent with the allegations in the complaint" to support the claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563 (2007) (citations omitted). Courts will grant a motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56 if "the pleadings . . . and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is "material" if it might affect the outcome of the case under the substantive governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-moving party. *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000)).

## II. Legal Analysis

### 1. The Plaintiff's Motion for Summary Judgment

The plaintiff asserts that he is entitled to summary judgment because "[t]he Defendant's motion is predicated upon evidence that was fabricated; [Def's Ex. 3] thereby, it was submitted to commit a fraud upon the Court." Pl.'s Resp. at 1. The exhibit to which the plaintiff refers is the DOES' "Notice of Determination of Overpayment" dated January 28, 2009. Unlike the plaintiff's proffered overpayment notice of that same date covering pay periods from July 12, 2008 to August 2, 2008, Pl.'s Resp. Ex. B, the defendants' exhibit covers pay periods from October 18, 2008 to January 17, 2009, and the overpayment amount is $5,026. The plaintiff claims that "[t]he fabricated overpayment notice was never sent to [him] prior to April 2nd, 2010." *Id*. He thus concludes that "[t]he evidence was fabricated to prejudice and mislead the Court about the nature of the claims in the Plaintiff's complaint" and, therefore, is inadmissible. *Id*.; *see also id* at 3-4 (¶ 6 of Pl.'s Facts Not in Dispute).

The defendants dispute the fabrication charge but also contend that the disputed document is not material because the "[p]laintiff has admitted that he received a notice that instructed him to file any appeal of the DOES determination with the Office of Administrative

4

Hearings ("OAH")][.]" Defendants' Response to Plaintiff's " 'Facts Not in Dispute' " [Dkt. No. 23] ¶ 6. The record supports, if anything, an inadvertent omission. The overpayment amount of $1,436 listed in the plaintiff's exhibit and that of $5,026 listed in the defendants' exhibit equal $6,462, which is the overpayment amount the plaintiff alleges is listed in a third notice he received on March 31, 2009, Compl. at 5, which neither party has supplied to the Court. In any event, the information relevant to the due process claim discussed later appears in both the challenged exhibit and the plaintiff's exhibit. Thus, even if the defendants' exhibit is proven to be fraudulent, the result would be to exclude it, *see* Fed. R. Evid. 103(a), and perhaps to impose sanctions under Fed. R. Civ. P. 11, not to award summary judgment to the plaintiff. The plaintiff's motion for summary judgment therefore is denied.

**2. The Defendants' Motion to Dismiss**

*A. The Personal-Capacity Claim Against Walsh*

The defendants correctly argue that the plaintiff has stated no claim against Walsh in his individual capacity because the facts do not support Walsh's direct participation in the alleged wrongdoing. Memorandum of Points and Authorities in Support of the Motion of Defendants to Dismiss the Complaint ("Defs.' Mem.") at 7-8; *see Hurt v. Quick*, 210 Fed. Appx. 10 (D.C. Cir. 2006) (citing *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (stating that a § 1983 complaint must allege personal involvement by a government official in events giving rise to a constitutional claim) (other citation omitted). The complaint against Walsh in his individual capacity therefore is dismissed.

*B. The Municipal Liability Claim Against the District of Columbia*

Because the complaint against Walsh in his official capacity as Director of the DOES is in effect against his employer, the District of Columbia, *see Kentucky v. Graham*, 473 U.S. 159,

5

166 (1985); *Mason v. Judges of U.S. Court of Appeals for D.C. Cir. in Regular Active Serv. Acting in Their Official Capacities*, 952 F.2d 423, 425 (D.C. Cir. 1991), the defendants argue that the plaintiff has failed to state a claim of municipal liability against the District. Defs.' Mem. at 9-10. In relevant part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (2000). As a municipality, the District of Columbia is a "person" for purposes of § 1983. *Best v. District of Columbia*, 743 F. Supp. 44, 46 (D.D.C. 1990) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). "[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95) (emphasis in original). "*Respondeat superior* or vicarious liability will not attach under § 1983," *id*., and therefore "a municipality cannot be held liable solely because it employs a tortfeasor[.]" *Monell*, 436 U.S. at 691.

The District of Columbia, then, may be subject to liability under § 1983 only "when an official policy or custom causes the complainant to suffer a deprivation of a constitutional right." *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986). The policy or custom itself must be "the moving force behind the constitutional violation." *Id*. (quoting *Monell*, 436 U.S. at

694); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (plaintiff must show course deliberately pursued by city establishing affirmative link between city's policy and alleged constitutional violation).

The plaintiff seeks to hold the District liable for enforcing what he claims is an unconstitutional statute that permits overpayment determinations without first providing an evidentiary hearing. *See* Compl. at 6-7 (citing D.C. Code § 51-119(d)). He also claims that the statute violates the Social Security Act, 42 U.S.C. § 503(a), *id*. at 7, but the Supreme Court has concluded that "an evidentiary hearing is *not* required prior to the termination of disability benefits" under the Social Security Act.[2] *Mathews v. Eldridge,* 424 U.S. 319, 349 (1976) (emphasis added). In addition, the plaintiff seeks to hold the District liable for the "inadequate training" of the unidentified DOES employee who allegedly misinformed him during a telephone conversation in December 2008 that he was ineligible to receive unemployment benefits in the District because his claim should have been filed in Maryland. Pl.'s Resp. at 3; *see* Compl. at 8. The Court will resolve the latter claim first.

1. The District's Liability for Failure to Train

In support of his allegation that the information conveyed by the unidentified DOES employee was erroneous, the plaintiff points to the Final Order of the District of Columbia Office of Administrative Hearings dated February 3, 2009, which "declared that [he] remained qualified

---

[2] The provision the plaintiff cites addresses the prerequisites for states to receive payments from the federal government for the administration of unemployment compensation, which include "methods . . . reasonably calculated to insure full payment of unemployment compensation when due[.]" 42 U.S.C. § 503(a)(1). Another requirement is that the states provide "[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied." *Id*. at (a)(3). The statute does not specifically require a pre-termination hearing, however.

to receive benefits when due." Pl.'s Resp. at 3 (citing Exhibit A) ("Final Order"). That decision, however, concerned the plaintiff's separate claim for unemployment compensation based on his termination from SOJAM and addressed whether the plaintiff left that job voluntarily, which would have disqualified him from receiving benefits. Because SOJAM failed to appear at the evidentiary hearing to prove that the plaintiff had left voluntarily, the Administrative Law Judge ("ALJ") determined that the plaintiff remained qualified to receive such benefits. *See* Final Order at 3. The ALJ's decision as to SOJAM is not relevant to the plaintiff's claims arising from his layoff from A-Advance. In any event, "[p]roving a failure-to-train claim is no easy task [and] a plaintiff cannot prevail simply by showing that a single officer was inadequately trained." *Atchinson v. District of Columbia*, 73 F.3d 418, 421 (D.C. Cir. 1996) (citation omitted). Moreover, the District cannot be held liable under § 1983 for the employee's single telephone call to the plaintiff because "a municipality is liable not under principles of *respondeat superior*, but only for constitutional torts arising from 'action pursuant to official municipal policy,' " *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) (quoting *Monell*, 436 U.S. at 691), which has not been shown to have existed here.

    2. The District's Liability for Enforcing Its Statute

In assessing whether a due process violation has occurred, a threshold question for the Court is whether the party asserting the violation has a protected property interest that he claims has been violated. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). It is not disputed that "[u]nemployment benefits are a property interest protected by the due process [clause]," *Berg v. Shearer*, 755 F.2d 1343, 1345 (8th Cir. 1985) (citing cases), and the Court will

assume, without deciding, that a deprivation has occurred here.³ The next question becomes what process is due before the deprivation of the interest is constitutionally permissible. *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991). The protections necessary to satisfy due process vary depending on the "time, place and circumstance . . . as the particular situation demands." *Mathews*, 424 U.S. at 334. A pre-deprivation hearing is required under limited circumstances. *See id*. at 333 (recognizing "only one [such] case. . . [holding] that a hearing closely approximating a judicial trial is necessary") (citing *Goldberg v. Kelly*, 397 U.S. 254, 266-71 (1970) (requiring a pre-termination evidentiary hearing before public assistance payments to welfare recipients are discontinued). To determine the adequacy of statutory procedures available to a plaintiff, courts should consider "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews,* 424 U.S. at 335.

On its face, the challenged District of Columbia statute comports with due process by providing "some form of hearing . . . before an individual is *finally* deprived of a property interest." *Id*. at 333 (emphasis added) (citations omitted). Pursuant to D.C. Code § 51-119(d)(2)

---

³ The plaintiff claims that he was denied "notice and the opportunity for a hearing prior to termination of his benefits or prior to the determination that an overpayment on his account had occurred." Compl. at 5 (Count XVIII). It is questionable whether a deprivation triggering due process protections has occurred. According to the overpayment notices forming the basis of this action, the plaintiff "will either have such amount deducted from future benefits . . . or [] will have to repay [the DOES] in the amount which you have received." Pl.'s Resp., Ex. B. The plaintiff's failure to do the latter would subject him to "collection by civil action[.]" *Id*. He has not alleged that any of those threatened actions have occurred, however.

(2001), "[t]he determination of whether a person has received any sum as benefits to which he is not entitled and the review to [sic] such a determination shall be made in accordance with §§ 51-111, 51-112[.]" Section 51-111 provides the panoply of rights the plaintiff seeks in the complaint, *i.e.*, the "opportunity to present evidence and to be heard," § 51-111(c), "[a] full and complete record . . . of all proceedings . . . testimony . . . taken down by a stenographer or recording device," and written or recorded findings of fact, § 51-111(f), and section 51-112 provides for judicial review of the District of Columbia Unemployment Compensation Board's decision "in the District of Columbia Court of Appeals in accordance with the District of Columbia Administrative Procedure Act." Had the plaintiff appealed the overpayment determinations to OAH, he presumably would have received the process due him under the circumstances. In the absence of any indication that the District infringed upon the plaintiff's due process rights resulting from a custom, practice or policy, the plaintiff's municipal liability claim fails.

For the foregoing reasons, the Court grants the defendants' motion to dismiss under Rule 12(b)(6) and denies the plaintiff's motion for summary judgment under Rule 56.[4]

                                                  _____s/_____
                                                  Reggie B. Walton
DATE: December 6, 2010                           United States District Judge

---

[4] A separate Order accompanies this Memorandum Opinion